United States District Court, S.D. Indiana

Indianapolis Division

Thomas TARTER, M.D., Plaintiff,

v.

WABASH EM-I MEDICAL SERVICES, P.C., a professional corporation, Defendant.

Case No._____ **1:12 -cv- 0733** SEB -DML

May 29, 2012

Trial By Jury Demanded

**Complaint and Jury Demand**

Mallor Grodner LLP, D. Michael Allen, Atty. No. 22256-53, 511 Woodscrest Drive, Bloomington, Indiana 47401. (812) 332-5000, (812) 961-6161, facsimile, mike@lawmg.net, Attorney for Plaintiff, Thomas Tarter, M.D.

Plaintiff, Thomas TARTER, M.D. ("Plaintiff" or "Dr. Tarter"), by counsel, Mallor Grodner LLP, for his complaint against Defendant WABASH EM-I MEDICAL SERVICES, P.C. ("Defendant" or "WEMS") states:

**Parties**

1.      Dr. Tarter is a resident and citizen of Bloomington, Monroe County, Indiana.

2.      At all times relevant to this case, Dr. Tarter was a competent, qualified, emergency medicine physician, licensed to practice medicine in the State of Indiana.

3.      WEMS is an Indiana professional corporation, with a principal place of business in Greenwood Village, Colorado, doing business in various locations throughout the United States, including in Martinsville, Morgan County, Indiana.

1

4.      WEMS provides physician staffing for hospitals, including such staffing for the emergency department of the Morgan Hospital & Medical Center (the "Hospital"), located in Martinsville, Morgan County, Indiana, where Dr. Tarter was working.

### Jurisdiction and Venue

5.      Subject matter jurisdiction for Plaintiff's cause of action against Defendant exists under 28 U.S.C. § 1331 because this case involves a federal question, namely discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended, violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, as amended, and violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, as amended.

6.      Defendant conducted business in Martinsville, Morgan County, Indiana at all times relevant to this case and has contacts sufficient to subject it to personal jurisdiction.

7.      Venue for this cause of action exists in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to the claims have occurred in this judicial district as Plaintiff worked for Defendant in Martinsville, Morgan County Indiana.

8.      Dr. Tarter has complied with all conditions precedent to jurisdiction under the ADA and has exhausted his administrative remedies as follows:

A.      A charge of discrimination on the basis of disability was timely filed with the Indiana Civil Rights Commission ("ICRC") and the United States Equal Employment Opportunity Commission ("EEOC") on or before October 4, 2010, within 180 days of the commission of the unlawful employment practices committed by Defendant.

B.       On February 29, 2012, the EEOC issued its *Dismissal and Notice of Rights*, which contained a "neutral" or "no determination" determination and Dr. Tarter's right to sue authorization, which was received by Dr. Tarter on or about March 2, 2012. A true and accurate copy of the *Dismissal and Notice of Rights* is attached hereto and made a part hereof as Exhibit A.

C.       This complaint has been filed within 90 days of Dr. Tarter's receipt of the right to sue authorization from the EEOC.

9.       Supplemental jurisdiction exists under 28 U.S.C. § 1367 for all other claims as they are so related to the claims in the original action that they form part of the same case of controversy.

## Factual Background

10.       Dr. Tarter and WEMS entered into an Employment Agreement (the "Agreement") in April 2009, to be effective on May 1, 2009. A true and accurate copy of the Employment Agreement is attached hereto and made a part hereof as Exhibit B.

11.       Dr. Tarter was to perform services under the Agreement as a physician in the emergency department of the Hospital.

12.       At all times relevant to this case, Dr. Tarter was qualified, based upon his education, training, and prior work experience, to perform the services required under the Agreement as a physician in the emergency department of the Hospital.

13.       Dr. Tarter suffered from a medical condition known as neuropathy (mononeuropathy/polyneuropathy) multiplex (the "Condition"), which lasted for greater than 6 months.

3

14.   Between May 1, 2009 and March 29, 2010, Dr. Tarter performed his obligations under the Agreement as required and without incident.

15.   On or about March 29, 2010, Dr. Tarter discovered three of his toes had turned black and he had pain in his feet, which are manifestations of his Condition.

16.   On or about March 29, 2010, Dr. Tarter was substantially limited in his ability to stand and walk due to his Condition.

17.   On or about March 30, 2010, Dr. Tarter reported to work at the Hospital as scheduled.

18.   Ruth Dwyer, N.P. ("Dwyer"), was an employee of the Hospital and was Dr. Tarter's supervisor at the Hospital.

19.   On or about March 30, 2010, while at the Hospital, Dwyer observed Dr. Tarter limping as he walked while performing his duties at the Hospital and spoke with Dr. Tarter about it.

20.   Dr. Tarter showed the condition of his feet to Dwyer and discussed the substantial limitations he was experiencing.

21.   Dwyer performed a medical examination on Dr. Tarter and observed his black toes and a quarter-sized pressure ulcer on the bottom of one of Dr. Tarter's feet.

22.   Dwyer determined Dr. Tarter was suffering from a serious medical condition and needed to consult with a specialist for treatment.

23.   Dwyer determined Dr. Tarter should be excused from working his scheduled shift at the Hospital on March 30, 2010 and continuing through April 4, 2010.

24.   Dwyer contacted WEMS and explained Dr. Tarter's Condition and her determination that he should be excused from working his scheduled shift at the Hospital on

March 30, 2010 and continuing through April 4, 2010 to seek necessary medical treatment for the Condition.

25.   WEMS advised Dwyer that Dr. Tarter had to work his scheduled shift on March 30, 2010 because WEMS could not provide another doctor to cover the shift.

26.   Dr. Tarter remained at the Hospital and worked his scheduled shift on March 30, 2010.

27.   During the shift on March 30, 2010, Dr. Tarter continued to be substantially limited in his ability to stand and walk due to his Condition and he endured significant pain.

28.   Harpreetinder Singh, M.D. ("Dr. Singh"), was a WEMS employee and was the acting Medical Director at the Hospital for WEMS.

29.   On or about March 31, 2010, Dr. Tarter continued to be substantially limited in his ability to stand and walk due to his Condition.

30.   On or about March 31, 2010, Dr. Tarter contacted Dr. Singh and explained his Condition.

31.   Dr. Tarter requested time off from work at the Hospital to seek medical treatment.

32.   Dr. Singh approved Dr. Tarter's request for medical leave and advised Dr. Tarter he would contact WEMS and find another doctor to cover Dr. Tarter's next shift at the Hospital.

33.   Shortly after speaking with Dr. Singh, Dr. Tarter was contacted by a WEMS representative who advised Dr. Tarter that he was approved for medical leave and his three upcoming shifts at the Hospital, on April 1, April 3, and April 4, 2010, would be covered by other doctors so that he could have time to seek medical treatment.

34.     The WEMS representative also promised Dr. Tarter that once the aforementioned time had passed, he could contact the WEMS representative to discuss whether additional medical leave time would be needed.

35.     The approval for time off was not unusual because WEMS routinely substituted other doctors to cover shifts at the Hospital for doctors who had to miss a scheduled shift for various reasons, including those related to a health or medical condition and those entirely unrelated to any health or medical condition.

36.     Dr. Tarter had previously covered shifts for other doctors at the Hospital when those doctors had to miss their scheduled shifts for various reasons, including those related to a health or medical condition and those entirely unrelated to any health or medical condition

37.     The WEMS representative further promised Dr. Tarter that WEMS would prepare a medical leave plan for him and would send additional paperwork to him to complete regarding his medical leave.

38.     The WEMS representative repeatedly promised Dr. Tarter that everything regarding his employment would be fine and that he should take care of himself and focus on getting better.

39.     The WEMS representative asked Dr. Tarter to call and advise WEMS when his medical condition had improved and he was able to return to work.

40.     On or about April 1, 2010, Dr. Tarter submitted paperwork to WEMS regarding a disability leave of absence and FMLA leave for himself.

41.     On or about April 5, 2010, Dr. Tarter contacted WEMS and advised he could return to work for his next scheduled shift at the Hospital, which was April 9, 2010.

42.     The WEMS representative promised Dr. Tarter he did not have to worry about working his April 9, 2010 shift at the Hospital because it was already covered by another doctor.

43.     Dr. Tarter then prepared to return to work for his next following scheduled shift at the Hospital on April 13, 2010.

44.     On April 7, 2010, WEMS sent notice in a letter (the "Letter") to Dr. Tarter that it was unilaterally terminating the Agreement, effective immediately, pursuant to Section 10(A)(9) of the Agreement.

45.     Section 10(A)(9) of the Agreement reads "In the event that the appropriate authorities of a hospital at which Employee is providing services request that Employee no longer provide such services at the hospital."

46.     The appropriate authorities at the Hospital never requested that Dr. Tarter no longer provide services at the Hospital.

47.     Dr. Tarter received the Letter on April 9, 2010.

48.     On or about April 13, 2010, WEMS sent FMLA "Leave of Absence" forms to Dr. Tarter, with instructions that he and his healthcare provider complete the forms and return them to WEMS, as well as documents regarding employer paid life insurance and long-term disability.

49.     On or about April 19, 2010, WEMS sent a letter to Dr. Tarter containing documentation for him to begin long-term disability status and to accelerate his life insurance plan.

50.     On or about May 2, 2010, Dr. Tarter contacted WEMS and was promised his long-term disability status would become effective on May 9, 2010.

51.     On or about May 3, 2010, WEMS sent a letter to Dr. Tarter advising him he had been denied long-term disability status.

52.    As a result of WEMS's termination of Dr. Tarter's employment and other acts, Dr. Tarter has lost wages and benefits, will continue to lose wages and benefits, and has suffered mental anguish, all of which will continue into the future.

53.    WEMS's acts were in deliberate indifference, reckless disregard, or willfully or intentionally done.

## Count 1 – Violation of 42 U.S.C. § 12101, *et. seq.* (Regarded as Disabled)

54.    Plaintiff incorporates by reference paragraphs 1 through 53 of this Complaint as if fully restated and realleged herein.

55.    WEMS regarded Dr. Tarter as having a disability in the form of a physical impairment that substantially limited him in a major life activity.

56.    WEMS terminated Dr. Tarter's employment because it regarded him as having a disability in the form of a physical impairment that substantially limited him in a major life activity.

57.    WEMS violated the ADA when it terminated Dr. Tarter's employment.

58.    WEMS's claim that Dr. Tarter was terminated as a result of the Hospital's request was designed to cover WEMS's violation of the ADA.

59.    WEMS acted with malice or with reckless disregard for Dr. Tarter's federally protected rights.

60.    As a direct and proximate result of WEMS's discrimination based upon its regarding Dr. Tarter as having a disability, Dr. Tarter has suffered loss of employment, loss of income, and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment, and future lost income and benefits.

WHEREFORE, Plaintiff Thomas TARTER, M.D., prays for the entry of judgment in his favor and against Defendant WABASH EM-I MEDICAL SERVICES, P.C. as follows:

A.     Enter a finding that Dr. Tarter was subjected to discrimination in violation of the ADA;

B.     Order that WEMS reinstate Dr. Tarter to his former position or equivalent position earning his former wages and benefits;

C.     Award Dr. Tarter front pay, as appropriate;

D.     Award Dr. Tarter compensatory damages in an amount to be proven at trial;

E.     Award Dr. Tarter punitive damages in an amount to be proven at trial;

F.     Award Dr. Tarter all back pay and lost benefits he would have received but for the discriminatory acts and practices of WEMS;

G.     Award Dr. Tarter reasonable attorneys' fees and costs incurred in this action;

H.     Award Dr. Tarter prejudgment interest; and

I.     Award Dr. Tarter any further relief this Court deems to be just and appropriate.

### Count 2 – Violation of 42 U.S.C. § 12101, *et. seq.* (Disability)

61.     Plaintiff incorporates by reference paragraphs 1 through 60 of this Complaint as if fully restated and realleged herein.

62.     Section 12112 of the ADA provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

9

63.     WEMS is a covered entity as an employer because it is engaged in an industry affecting commerce and had 15 or more employees in each of 20 or more calendar weeks in the relevant current or preceding calendar year.

64.     Dr. Tarter was disabled within the meaning of the ADA due to the Condition.

65.     Dr. Tarter's Condition caused him to be disabled because it was a physical impairment that substantially limited one or more of his major life activities, including walking, standing, and the operation of his neurological functions.

66.     Dr. Tarter's major life activities of walking, standing, and the operation of his neurological functions were substantially limited because he was limited in the manner and extent to which he could perform those activities when compared to the average person in the general population in a long-term or permanent manner.

67.     Dr. Tarter's Condition is not constant, but it substantially limits the aforementioned major life activities when active.

68.     Dr. Tarter was, at all times relevant, qualified to perform his duties under the Agreement for his work at the Hospital.

69.     Dr. Tarter could perform the essential functions of his duties of under the Agreement for his work at the Hospital with or without accommodation.

70.     WEMS knew of Dr. Tarter's disability and Condition prior to terminating his employment.

71.     WEMS failed to make any attempt to make a reasonable accommodation for Dr. Tarter to enable Dr. Tarter to perform his job.

72.     WEMS did not terminate the employment of employees without disabilities who requested leave for medical reasons.

73.    WEMS did not terminate the employment of employees without disabilities who requested leave for non-medical reasons.

74.    Dr. Tarter suffered an adverse employment decision when WEMS terminated his employment because of his disability.

75.    WEMS violated the ADA when it terminated Dr. Tarter's employment.

76.    WEMS's claim that Dr. Tarter was terminated as a result of the Hospital's request was designed to cover WEMS's violation of the ADA.

77.    WEMS acted with malice or with reckless disregard for Dr. Tarter's federally protected rights.

78.    As a direct and proximate result of result of WEMS's discrimination based upon Dr. Tarter's disability, Dr. Tarter has suffered loss of employment, loss of income, and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment, and future lost income and benefits.

WHEREFORE, Plaintiff Thomas TARTER, M.D., prays for the entry of judgment in his favor and against Defendant WABASH EM-I MEDICAL SERVICES, P.C. as follows:

A.    Enter a finding that Dr. Tarter was subjected to discrimination in violation of the ADA;

B.    Order that WEMS reinstate Dr. Tarter to his former position or equivalent position earning his former wages and benefits;

C.    Award Dr. Tarter front pay, as appropriate;

D.    Award Dr. Tarter compensatory damages in an amount to be proven at trial;

E.    Award Dr. Tarter punitive damages in an amount to be proven at trial;

11

F.      Award Dr. Tarter all back pay and lost benefits he would have received but for the discriminatory acts and practices of WEMS;

G.      Award Dr. Tarter reasonable attorneys' fees and costs incurred in this action;

H.      Award Dr. Tarter prejudgment interest; and

I.      Award Dr. Tarter any further relief this Court deems to be just and appropriate.

### Count 3 – Promissory Estoppel

79.    Plaintiff incorporates by reference paragraphs 1 through 78 of this Complaint as if fully restated and realleged herein.

80.    WEMS made promises to Dr. Tarter regarding his employment and benefits when it:

A.      promised he could contact the WEMS representative to discuss whether additional medical leave time would be needed after the initial time ended after April 4, 2010;

B.      promised Dr. Tarter that WEMS would prepare a medical leave plan for him and would send additional paperwork to him to complete regarding his medical leave;

C.      promised Dr. Tarter that everything regarding his employment would be fine and that he should take care of himself and focus on getting better;

D.      promised Dr. Tarter he did not have to worry about working his April 9, 2010 shift at the Hospital;

E.      sent FMLA "Leave of Absence" forms to Dr. Tarter on or about April 13 2010, with instructions that he and his healthcare provider complete the forms and return them to WEMS, as well as documents regarding employer paid life insurance and long-term disability;

12

F.      sent a letter to Dr. Tarter on or about April 19, 2010, containing documentation for him to begin long-term disability status and to accelerate his life insurance plan; and

G.      promised Dr. Tarter his long-term disability status would become effective on May 9, 2010, when he contacted WEMS on or about May 2, 2010.

81.     WEMS made the foregoing promises to Dr. Tarter with the expectation that Dr. Tarter would rely upon them.

82.     The promises made by WEMS induced Dr. Tarter to reasonably rely upon them.

83.     Dr. Tarter did rely upon the promises made by WEMS.

84.     Dr. Tarter's reliance on the promises made by WEMS was of a definite and substantial nature.

85.     As a direct and proximate result of result of Dr. Tarter's reliance upon the promises made by WEMS, Dr. Tarter has suffered loss of employment, loss of income, and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment, and future lost income and benefits.

86.     Injustice to Dr. Tarter can only be avoided by enforcing the promises WEMS made to Dr. Tarter.

WHEREFORE, Plaintiff Thomas TARTER, M.D., prays for the entry of judgment in his favor and against Defendant WABASH EM-I MEDICAL SERVICES, P.C. as follows:

A.      Enter a finding that WEMS made the aforementioned promises to Dr. Tarter;

B.      Order that WEMS fulfill the promises it made to Dr. Tarter;

C.      Award Dr. Tarter compensatory, reliance, and expectancy damages in an amount to be proven at trial;

D.     Award Dr. Tarter punitive damages in an amount to be proven at trial;

E.     Award Dr. Tarter all lost benefits he would have received but for the wrongful acts of WEMS;

F.     Award Dr. Tarter reasonable attorneys' fees and costs incurred in this action;

G.     Award Dr. Tarter prejudgment interest; and

H.     Award Dr. Tarter any further relief this Court deems to be just and appropriate.

### Count 4 – Violation of 29 U.S.C. § 1001, *et. seq.* (ERISA Interference)

87.     Plaintiff incorporates by reference paragraphs 1 through 86 of this Complaint as if fully restated and realleged herein.

88.     WEMS provides benefits to its employees under an Associated Physicians' Health and Welfare Flexible Benefits Plan (the "Plan").

89.     The Plan, and WEMS, are subject to the requirements of ERISA.

90.     Section 510 of ERISA provides that "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . ."

91.     Dr. Tarter was a participant in the Plan.

92.     Dr. Tater was qualified for his job position.

93.     WEMS terminated Dr. Tarter from employment to interfere with rights and benefits he was entitled to under the Plan and ERISA.

94.     Dr. Tarter was discharged from employment with WEMS because he manifested his intent and took steps to exercise rights and seek the benefits to which he was entitled under the Plan and ERISA.

14

95.    WEMS violated ERISA when it terminated Dr. Tarter's employment and denied Dr. Tarter rights and benefits he was entitled to under the Plan and ERISA.

96.    WEMS's claim that Dr. Tarter was terminated as a result of the Hospital's request was designed to cover WEMS's violation of ERISA.

97.    WEMS acted with malice or with reckless disregard for Dr. Tarter's federally protected rights.

98.    As a direct and proximate result of the WEMS's violation of ERISA, Dr. Tarter has suffered loss of benefits, great expense, emotional distress, humiliation, embarrassment, and future lost income and benefits.

WHEREFORE, Plaintiff Thomas TARTER, M.D., prays for the entry of judgment in his favor and against Defendant WABASH EM-I MEDICAL SERVICES, P.C. as follows:

A.    Enter a finding that Dr. Tarter was subjected to discrimination in violation of ERISA;

B.    Order that WEMS reinstate Dr. Tarter to his former position or equivalent position earning his former wages and benefits;

C.    Award Dr. Tarter front pay, as appropriate;

D.    Award Dr. Tarter compensatory damages in an amount to be proven at trial;

E.    Award Dr. Tarter punitive damages in an amount to be proven at trial;

F.    Award Dr. Tarter all back pay and lost benefits he would have received but for the discriminatory acts and practices of WEMS;

G.    Award Dr. Tarter reasonable attorneys' fees and costs incurred in this action;

H.    Award Dr. Tarter prejudgment interest; and

I.    Award Dr. Tarter any further relief this Court deems to be just and appropriate.

### Count 5 – Violation of 29 U.S.C. § 2601, *et. seq.* (FMLA Interference)

99. Plaintiff incorporates by reference paragraphs 1 through 98 of this Complaint as if fully restated and realleged herein.

100. During his employment, Dr. Tarter worked 1,250 hours or more in the 12 months prior to the medical leave in question and prior to his termination.

101. WEMS is an employer and subject to the requirements of FMLA because it engaged in commerce or in any industry or activity affecting commerce and employed 50 or more employees each working day during each of 20 or more calendar work weeks.

102. During his employment, Dr. Tarter did not violate any of WEMS's rules pertaining to sick leave or attendance.

103. During his employment, Dr. Tarter followed all rules and procedures he was obligated to follow under the Agreement.

104. During his employment, Dr. Tarter met all expectations of his job performance and training.

105. Dr. Tarter was eligible for the FMLA's protections because he was seeking medical leave under FMLA at a time when he would be an eligible employee.

106. WEMS is estopped from denying Dr. Tarter was an eligible employee when it made a series of promises to Dr. Tarter that made Dr. Tarter believe he was an eligible employee and was being offered medical leave under FMLA.

107. Dr. Tarter was entitled to FMLA leave because the Condition was a serious health condition as it required continuing treatment by a health care provider.

108.    The Condition required Dr. Tarter to receive treatment by Dwyer, Dr. Bales, and Dr. Parmenter, a foot specialist Dwyer had referred him to, on separate occasions within 30 days of his incapacity.

109.    The Condition would likely result in a period of incapacity lasting more than 3 consecutive days in the absence of medical intervention or treatment.

110.    Dr. Tarter attempted to exercise his rights under FMLA by informing WEMS about his Condition and beginning the process to secure medical leave under FMLA.

111.    WEMS did not terminate other employees who requested medical leave time, but who did not exercise rights under FMLA.

112.    WEMS violated the FMLA when it terminated Dr. Tarter's employment.

113.    WEMS's claim that Dr. Tarter was terminated as a result of the Hospital's request was designed to cover WEMS's violation of FMLA.

114.    WEMS acted willfully when it denied Dr. Tarter his rights under FMLA.

115.    WEMS acted with malice or with reckless disregard for Dr. Tarter's federally protected rights.

116.    As a direct and proximate result of WEMS's violation of FMLA, Dr. Tarter has suffered loss of employment, loss of income, and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment, and future lost income and benefits.

WHEREFORE, Plaintiff Thomas TARTER, M.D., prays for the entry of judgment in his favor and against Defendant WABASH EM-I MEDICAL SERVICES, P.C. as follows:

A.    Enter a finding that Dr. Tarter was subjected to discrimination in violation of FMLA;

B.     Order that WEMS reinstate Dr. Tarter to his former position or equivalent position earning his former wages and benefits;

C.     Award Dr. Tarter front pay, as appropriate;

D.     Award Dr. Tarter compensatory damages in an amount to be proven at trial;

E.     Award Dr. Tarter punitive damages in an amount to be proven at trial;

F.     Award Dr. Tarter all back pay and lost benefits he would have received but for the discriminatory acts and practices of WEMS;

G.     Award Dr. Tarter reasonable attorneys' fees and costs incurred in this action;

H.     Award Dr. Tarter prejudgment interest; and

I.     Award Dr. Tarter any further relief this Court deems to be just and appropriate.

### Count 6 – Violation of 29 U.S.C. § 2601, *et. seq.* (FMLA Retaliation)

117.   Plaintiff incorporates by reference paragraphs 1 through 116 of this Complaint as if fully restated and realleged herein.

118.   Dr. Tarter attempted to exercise his rights under the FMLA by informing WEMS about his medical condition inquiring about FMLA leave, and attempting to coordinate the medical leave promised to him by WEMS.

119.   Instead of following through on its promise regarding FMLA medical leave, WEMS terminated Dr. Tarter's employment.

120.   Dr. Tarter was discharged from employment with WEMS because he manifested his intent and took steps to exercise rights and seek the benefits to which he was entitled under FMLA.

121.   WEMS violated the FMLA when it terminated Dr. Tarter's employment.

122.    WEMS's claim that Dr. Tarter was terminated as a result of the Hospital's request was designed to cover WEMS's violation of the FMLA.

123.    WEMS acted willfully when it denied Dr. Tarter his rights under FMLA.

124.    WEMS acted with malice or with reckless disregard for Dr. Tarter's federally protected rights.

125.    As a direct and proximate result of WEMS's violation of FMLA, Dr. Tarter has suffered loss of employment, loss of income, and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment, and future lost income and benefits.

### Count 7 – Breach of Contract

126.    Plaintiff incorporates by reference paragraphs 1 through 125 of this Complaint as if fully restated and realleged herein.

127.    WEMS owed duties to Dr. Tarter under the terms of the Agreement, among these were continued employment, payment of wages, and provision of other benefits.

128.    Dr. Tarter had performed and was continuing to perform as was required under the terms of the Agreement.

129.    Dr. Tarter was not in breach of the Agreement.

130.    WEMS's unilateral termination of the Agreement was without justification and constituted a material breach of the Agreement.

131.    WEMS's claim that Dr. Tarter's employment was terminated as a result of the Hospital's request was designed to cover WEMS's violations of federal law.

132.    As a direct and proximate result of WEMS's breach of the Agreement, Dr. Tarter has suffered loss of employment, loss of income, and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment, and future lost income and benefits.

WHEREFORE, Plaintiff Thomas TARTER, M.D., prays for the entry of judgment in his favor and against Defendant WABASH EM-I MEDICAL SERVICES, P.C. as follows:

      A.     Enter a finding that WEMS's termination of Dr. Tarter was a material breach of the Agreement;

      B.     Order that WEMS reinstate Dr. Tarter to his former position or equivalent position earning his former wages and benefits;

      C.     Award Dr. Tarter front pay, as appropriate;

      D.     Award Dr. Tarter compensatory damages in an amount to be proven at trial;

      E.     Award Dr. Tarter punitive damages in an amount to be proven at trial;

      F.     Award Dr. Tarter all back pay and lost benefits he would have received but for the discriminatory acts and practices of WEMS;

      G.     Award Dr. Tarter reasonable attorneys' fees and costs incurred in this action;

      H.     Award Dr. Tarter prejudgment interest; and

      I.     Award Dr. Tarter any further relief this Court deems to be just and appropriate.

## Jury Demand

Plaintiff, Thomas Tarter, M.D., by counsel, Mallor Grodner LLP, herby demands a trial by jury.

Dated: May 29, 2012

**MALLOR | GRODNER LLP**

_____

D. Michael Allen #22256-53

D. Michael Allen #22256-53
**MALLOR | GRODNER LLP**
511 Woodscrest Drive
Bloomington, Indiana 47401
Tel.   (812) 332-5000
FAX   (812) 961-6161
Email: mike@lawmg.net